UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

FUTTER LUMBER CORPORATION,

              Debtor.

-----------------------------------------------------------X
BERNICE FUTTER, ILEANA FUTTER,
JAMES FUTTER, DAVID KORKHAM and
LYN GAYLORD,

                  Petitioners,

-against-

TODD E. DUFFY, TRUSTEE FOR THE
FUTTER LUMBER CORPORATION
LIQUIDATION TRUST,

                  Respondent.

-----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
11-MC-838 (ADS)

**APPEARANCES:**

**MORITT HOCK & HAMROFF LLP**
*Attorneys for the Petitioners*
400 Garden City Plaza
Suite 202
Garden City, New York 11530
      By:    Leslie A. Berkoff, Esq.
              Lee J. Mendelsohn, Esq.
              Theresa A. Driscoll, Esq., of Counsel

**ANDERSON KILL & OLICK, P.C.**
*Attorneys for the Respondent*
1251 Avenue of the Americas
New York, New York 10020
      By:    Todd E. Duffy, Esq.
              Dennis J. Nolan, Esq., of Counsel

**SPATT, District Judge.**

The Petitioners Bernice Futter, Ileana Futter, James Futter, David Korkham and Lyn Gaylord, (collectively, the "Petitioners" or the "Defendants"), seek leave to file an interlocutory appeal from a decision of the Bankruptcy Court (Dorothy D.T. Eisenberg, J.), denying their motion to dismiss an adversary proceeding commenced by the Respondent, Todd E. Duffy, as trustee for the Futter Lumber Corporation Liquidation Trust. For the reasons that follow, the Court denies leave to file an interlocutory appeal.

## I. BACKGROUND

### A. The Bankruptcy and Chapter 11 Reorganization Plan

The Debtor, Futter Lumber Corporation ("Futter"), was a lumber wholesaler and distributor. The corporation was privately held and owned by Bernard Futter; Bernice Futter, his wife; Bernard Futter as Trustee f/b/o the Bernard Futter Trust; and Kenneth Futter as Trustee of the Ileana Futter Trust, the David Futter Trust, and the James Futter Trust. On May 8, 2009, an involuntary petition was filed under Chapter 7 of the Bankruptcy Code against the Debtor in the Bankruptcy Court. It was subsequently converted to one under Chapter 11 on June 11, 2009.

The Debtor had three non-debtor affiliates — Futter Trading LLC, Futter West LLC, and Global Wood LLC (collectively, the "Affiliates"). The ownership interests in the Affiliates were held by Bernard Futter and his children, David Futter, James Futter, and Ileana Futter. As explained in greater detail in the Bankruptcy Court's Order, the Affiliates owed the Debtor approximately $4.5 million in receivables related to services and financial accommodations. After winding down the businesses, the Affiliates held approximately $1.3 million, which was turned over by the Affiliates to the Debtor to help fund the Debtor's liquidating Chapter 11 reorganization plan (the "Plan").

On June 9, 2010, the Debtor's Plan was confirmed by the Bankruptcy Court. Article 8.4 of the Plan provided for general releases whereby creditors agreed to release, waive or discharge all claims and causes of action based on any act, omission, transaction or other occurrence involving the Debtor in connection with, or in contemplation of, the bankruptcy case that such creditor has or may have against the Debtor and the bankruptcy estate, the officers and directors of the Debtor, the Creditors Committee and each member thereof, and the professionals retained by them. In addition, specific releases were given to Bernard Futter and Kenneth Futter in the Plan. As part of the consideration for the specific releases given in favor of these two individuals, the general unsecured claim of Bernard Futter was reduced by $114,300 and allowed in the amount of $1,418,695, and the general unsecured claim of Kenneth Futter was reduced by $35,700 and allowed in the amount of $444,300 (the "Settlement"). (Plan, at 24.)

Pursuant to the confirmed Plan, a liquidation trust was established with the Respondent as Liquidation Trustee. It was created to administer and reduce to cash all of the Debtor's property, rights and interest; to resolve all claims and causes of action; and to make distributions for the benefit of holders of allowed claims against the Debtor. A liquidation trust agreement was entered into post-confirmation between the Debtor's bankruptcy estate and the Trustee, which stated that all of the Debtor's "Causes of Action" were to be fully preserved and retained exclusively by the Liquidation Trust. Pursuant to Article 1.1 of the Plan, "Causes of Action" were defined to mean "any and all rights or claims that the Debtor has or may have against any third party including, without limitation, all Avoidance Actions . . . ." (Plan, at 5.) "Avoidance Actions" included "any claim, right or causes of action under Chapter 5 of the Bankruptcy Code; all fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in

creditors rights to avoid, rescind, or recover on account of transfers; all preference laws and the New York Debtor & Creditor Law." (Id., at 4.)

The Bankruptcy Court also approved the disclosure statement (the "Disclosure Statement"), finding that it provided the creditors with sufficient information as to the Plan as required under the Bankruptcy Code. The Disclosure Statement provided as follows:

### Review of Certain Claims and Causes of Action

During the pendency of the Chapter 11 case, at the Committee's request, the Debtor provided the Committee's financial advisors with full access to its books and records…the Committee's financial advisors were provided, among other things, documents relating to i) the Affiliates; ii) claims held by insiders; iii) payments to insiders and iv) loans made by insiders to the Debtor. . . .

The analysis by the Committee's financial advisors enabled them to evaluate and consider potential claims against the Affiliates and claims against the insiders, and eventually in reaching an agreement with the Debtor regarding the contribution of funds from the Affiliates and the reductions in the claims of Bernard and Kenneth Futter.

*In an effort to resolve any potential claims and <u>causes of action</u> against the Affiliates or the insiders on a consensual basis,* the Debtor's [P]rincipals agreed under the Plan to (a) cause the Debtor's estate to receive approximately $1.3 million held by the Affiliates … to fund distribution under the Plan . . . .

(Disclosure Statement, at pp. 12-13 (emphasis added).) The meaning of this provision of the disclosure statement is in dispute. The Respondent asserts that this is only in reference to the Settlement described above and in particular, that the $1.3 million was consideration for the release of claims only as to Bernard and Kenneth Futter. However, the Petitioners interpret the term "insiders" more broadly and claim that it includes causes of action as against them as well, because under the Bankruptcy Code, they were either an officer, or a relative of a director or officer, of the Debtor at the time of the Debtor's bankruptcy. See 11 U.S.C. § 101(31).

The Disclosure Statement also contained language regarding the preservation of causes of action by the Liquidating Trustee, now the Respondent. In particular, it stated that:

> Identified in the Debtor's Statement of Financial Affairs at question 3(a) is a non-exclusive list of certain potential Causes of Action, which are expressly identified and preserved for possible prosecution on and after the Effective Date. The failure to list any potential or existing claims or Causes of Action is not intended to and shall not limit the rights of the Liquidation Trustee to pursue any claims or Causes of Action not listed or identified. *The Confirmation Order shall not bar the Liquidation Trustee, on behalf of the Liquidation Trust, by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, or defending any matter or Cause(s) of Action.*

(Disclosure Statement, p. 23 (emphasis added).)

The final Disclosure Statement was the end result of a process of several negotiations, amendments, and Bankruptcy Court hearings. According to the Petitioners, it was amended to address the Bankruptcy Court's two concerns relating to (1) the resolution of claims against Affiliates and insiders; and (2) to provide a detailed description of the claims by and against insiders and the resolution of such claims. According to the Respondent, the negotiations as to the Plan primarily concerned only the recovery of the $4.5 million intercompany receivable, as well as relinquishing the causes of action specifically as to Bernard Futter and Kenneth Futter. In fact, the Respondent alleges that the sentence concerning resolution of potential causes of action against the insiders was added after the Bankruptcy Court hearings and revisions, and that a broadly based release as against all insiders had never been discussed.

**B.  The Adversary Proceeding and the Motion to Dismiss**

On May 9, 2011, the Trustee commenced an adversary proceeding against the current Petitioners, in their capacity as "insiders" of the Debtor under the Bankruptcy Code. See 11 U.S.C. § 101(31) ("The term 'insider' includes — . . . (i) director of the debtor; (ii) officer of the

debtor; . . .or (vi) relative of a general partner, director, officer, or person in control of the debtor"). The Defendants in the adversary proceeding, now the current Petitioners, are: Bernice Futter, an owner of the Debtor; James Futter and Ileana Futter, equity owners of the Affiliates; as well as Lyn Gaylord and David Kirkham.

Specifically, the Trustee sought a money judgment under the Bankruptcy Code and New York Debtor and Creditor Law for damages resulting from, or relating to, certain alleged preferential transfers in the aggregate sum of $355,977.96 and fraudulent conveyances in the aggregate sum of $745,365.73 from the Debtor to or for the benefit of the Petitioners. In addition, the Trustee sought to (a) disallow any claims made by the Petitioners against the Debtor's bankruptcy estate under 11 U.S.C. § 502 until they paid the Trustee the amount of the alleged transfers; (b) subordinate their claims; and (c) re-characterize their claims as equity.

On July 8, 2011, the Petitioners filed a motion to dismiss the adversary proceeding pursuant to (1) Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012, for failure to state a claim for which relief can be granted; and (2) the doctrine of *res judicata* (the "Motion to Dismiss"). For reasons not relevant here, the only questions addressed by the Bankruptcy Court and currently at issue are (1) whether the Trustee's Complaint failed to state a claim for relief because such actions were not specifically reserved in the Plan; and (2) whether a reading of the Plan and the Disclosure Statement shows that the doctrine of *res judicata* applies.

On November 8, 2011, the Bankruptcy Court issued an Order in which it found that (1) there is no ambiguity in the Plan and the Trust Agreement, and to the extent there is any conflict with the Disclosure Statement, the terms of the Plan controls, (2) the Trustee's causes of action against the Petitioners were specifically reserved and the Petitioners had adequate notice of such

reservation of the causes of action, and (3) the Disclosure Statement is consistent with the Plan in that there was no prior resolution or waiver of the causes of action brought by the Trustee in the adversary proceeding, so that the Petitioners were never expressly granted a release from such causes of action. Accordingly, the Motion to Dismiss the Trustee's Complaint was denied by the Bankruptcy Court. See generally In re Futter Lumber Corp., Bankr. No. 09-73291-478, Adv. No. 11-9055-478, 2011 WL 5417094, at *11 (Bankr. E.D.N.Y. Nov. 8, 2011).

On December 9, 2011, the Petitioners filed a motion with this Court for leave to appeal the Bankruptcy Court's Order denying their Motion to Dismiss the Trustee's Complaint.

## II. DISCUSSION

### A. Legal Standard to Grant an Interlocutory Appeal from a Bankruptcy Court Order

"Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court." In re Kassover, 343 F.3d 91, 94 (2d Cir. 2003); see In re Cutter, No. 05 Civ. 5527, 2006 WL 2482674, at *3 (E.D.N.Y. Aug. 29, 2006) (stating that, while neither § 158 nor the Bankruptcy Rules "provides guidelines for determining whether a district court should grant leave to appeal, . . . most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b)") (citations omitted). "In determining whether to grant leave to appeal an interlocutory order from the bankruptcy court, the Court will apply the standard set forth in 28 U.S.C. § 1292(b), which is the standard used by the court of appeals to determine whether to entertain interlocutory appeals from the district court." Traversa v. Educ. Credit Mgmt. Corp., 386 B.R. 386, 388 (Bankr. D. Conn. 2008).

Thus, in deciding whether to grant leave to appeal from an interlocutory bankruptcy court order, a district court should consider whether: (1) "such order involves a controlling question of

law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); see Yerushalmi v. Shibolelth, 405 B.R. 44 (Bankr. E.D.N.Y. 2009). "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996). Furthermore, all three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal. See N. Fork Bank v. Abelson, 207 B.R. 382, 390 (Bankr. E.D.N.Y. 1997) (denying leave to appeal where there was a controlling issue of law, the determination of which would materially advance the litigation, but the moving party failed to show substantial grounds for difference of opinion).

## B. As to Whether an Interlocutory Appeal Should Be Granted

### 1. Controlling Question of Law

"To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." N. Fork Bank, 207 B.R. at 389. This articulation of the standard speaks to the "controlling" aspect, and is one which the Petitioners undoubtedly meet. If this Court were to grant the interlocutory appeal and potentially reverse the Bankruptcy Court Order, it would result in dismissal of the Complaint and thereby terminate the adversary action.

However, the more complicated issue is whether there is a controlling *question of law*, notwithstanding its controlling features. "[T]he 'question of law' must refer to a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the

record.'" In re Worldcom, Inc., No. 03 Misc. 47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) (quoting Ahrenholz v. Bd. of Trs. of Univ. of Illinois, 219 F.3d 674, 676–77 (7th Cir. 2000)). A determination that must be made "in equity or good conscience" cannot be characterized as a question of law that could be "decided quickly and cleanly without having to study the record." Enron Corp. v. Springfield Assocs., L.L.C. ("Enron/Springfield"), No. 01 Civ. 16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006) (quoting In re Worldcom, 2003 WL 21498904, at *10). Moreover, "where a 'legal' issue is 'essentially fact based in nature' interlocutory appeal is not appropriate." In re Complete Retreats, LLC, No. 07 Misc. 152, 2008 WL 220752, at *2 (D. Conn. Jan. 23, 2008) (quoting Brown v. City of Oneonta, N.Y., 858 F. Supp. 340, 349 (N.D.N.Y. 1994), rev'd on other grounds by, 106 F.3d 1125 (2d Cir. 1997)). "A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b)." In re Perry H. Koplik & Sons, Inc., 377 B.R. 69, 75 (Bankr. S.D.N.Y. 2007).

For example, "though the question of whether to stay a proceeding on the basis of international comity, pending the outcome of another case, is fairly considered a 'legal' question," courts tend to deny leave to file an interlocutory appeal challenging the bankruptcy court's finding because the resolution of the issue "requires a heavily fact-based analysis." In re Complete Retreats, LLC, 2008 WL 220752, at *3; see also In re Lehman Bros. Holdings, Inc., 422 B.R. 403, 407 (Bankr. S.D.N.Y. 2009) ("This Court cannot review the Bankruptcy Court's determination regarding comity without performing the same careful study of the record, the relationships of the parties and the British action performed by the Bankruptcy Court, and thus cannot conclude that the appeal presents a controlling question of law."); In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 ("Rather, the instant motion presents a question as to whether the

Bankruptcy Court properly evaluated admissible evidence presented in determining that comity should not be granted to the Indonesian legal proceedings.").

The instant motion for an interlocutory appeal presents, in part, questions of contract interpretation. In particular, it raises the precise issue of whether the Plan and Disclosure Statement specifically reserved the Trustee's causes of action in the adversary proceeding. "Such issues [of contract interpretation] ordinarily present questions of law for the court to decide." O'Brien v. Argo Partners, Inc., 736 F. Supp. 2d 528, 534 (E.D.N.Y. 2010). For instance, if the Plan and Disclosure Statement contain terms that are clear and unambiguous, and "reasonable people could not disagree as to the meaning of the text, the contract's interpretation is a question of law to be answered by the court." Sage Realty Corp. v. Jugobanka, D.D., No. 95 Civ. 0323, 1998 WL 702272, at *4 (S.D.N.Y. Oct. 8, 1998). Moreover, "[r]esolution of the issue of whether an ambiguity exists, sufficient to allow consideration of extrinsic evidence, presents a question of law for the court." O'Brien, 736 F. Supp. 2d at 535. In addition, "[a]pplication of the principles of *res judicata* presents a question of law to be reviewed de novo." In re Scott Cable Commc'ns., 259 B.R. 536, 542 (Bankr. D. Conn. 2001).

On the other hand, a resolution of this interlocutory appeal would also necessarily involve determinations that are heavily fact-based. For example, to determine whether the Petitioners had adequate notice of the reservation of the Trustee's causes of action against them, would necessarily involve a fact-specific inquiry into the particular Plan and Disclosure Statement to determine whether it possessed adequate information. See In re Worldcom, Inc., 2003 WL 21498904, at *10 ("the approval of a disclosure statement, rather than involving a controlling question of law . . . involves a fact-specific inquiry into the particular plan to determine whether it possesses 'adequate information' under § 1125.") (internal quotations omitted); In re

Ionosphere, 179 B.R. at 29 ("'The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.'") (quoting Texas Extrusion, 844 F.2d at 1157); see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) ("What constitutes adequate information is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties.").

Moreover, it would likely be necessary for this Court to examine the record, the lengthy history leading to the Settlement, and the hearing transcripts, in order to ultimately determine which parties gave consideration and received releases under the Plan, and determine exactly what the Settlement involved in order to properly assess applicability of *res judicata*. The Court agrees with the Respondent that resolving these issues cannot be done "quickly and cleanly without studying the record." WorldCom, 2006 WL 3592954, at *2 (citations omitted). This conclusion is further bolstered by the fact that the Bankruptcy Order at issue contained a thorough examination of the relevant facts and bankruptcy history, including the multiple oral arguments heard by Judge Eisenberg. See In re Futter Lumber Corp., 2011 WL 5417094, at *4 ("After due consideration of all of the arguments of the parties and the relevant documents at issue, the Court finds that the Defendants' Motion to Dismiss should be denied for the reasons set forth below."); id., at *3 ("At a hearing on the Motion to Dismiss held on August 16, 2011 . . ."); id. ("on September 20, 2011, the Court heard . . . additional arguments on the Motion to Dismiss").

"Since the issues to be appealed cannot be determined solely by interpreting the plain language of the Plan, but rather require an examination of other pleadings and exhibits, they are

not pure legal questions of contract construction appropriate for interlocutory review." In re Cross Media Marketing Corp., Nos. 03-13901, 07-878, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007).

Therefore, the Court finds that whether the Bankruptcy Court properly denied the Petitioner's Motion to Dismiss cannot properly be considered a controlling issue of law appropriate for interlocutory appeal.

### 2. Substantial Ground For Difference of Opinion

Even if a controlling issue of law existed, a court should only grant leave to file an interlocutory appeal where "the case law shows there to be a substantial ground for difference of opinion with respect to the controlling question." In re Pappas, 207 B.R. 379, 381 (2d Cir. 1997). "Substantial ground for difference of opinion exists where '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" Coudert Bros., 447 B.R. at 712 (quoting Enron, 2006 WL 2548592, at *4). However, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." In re Flor, 79 F.3d at 284. "At least some precedent that bears on the matter, however thin, may establish a substantial ground for dispute." Secs. Investor Protection Corp. v. Bernanrd L. Madoff Investment Secs. LLC, No. 11 Misc. 285, 2011 WL 6057927, at *5 (S.D.N.Y. Dec. 6, 2011). Further, "[m]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." Ellsworth, et al v. Myers, et al (In re Cross Media Marketing Corporation), No. 07 Civ. 878, 2007 WL 2743577, at *2 (S.D.N.Y. Sept.19, 2007) (citing Estevez–Yalcin v. Children's Vill., No. 01 Civ. 8784, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006)).

As an initial matter, neither side disputes and it is beyond contention, that a confirmed plan of reorganization constitutes a final judgment on the merits that is entitled to preclusive effect under the doctrine of *res judicata*. See Sure–Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869 (2d Cir. 1991) (noting that an order confirming a plan of reorganization has preclusive effect under *res judicata* ); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990) ("This issue has been settled for some time: a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits."). Accordingly, as a general matter, a debtor is precluded from asserting any claims post-confirmation that are not preserved in its plan. See In re I. Appel Corp., 300 B.R. 564, 567 (Bankr. S.D.N.Y. 2003) (citing D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York, 112 F.3d 257, 259 (7th Cir. 1997) (explaining that "confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by *res judicata*")).

However, it is also undisputed that where the right to pursue litigation is reserved in a plan or disclosure statement, *res judicata* will not prevent a debtor from subsequently pursuing those claims. See Tracar, S.A. v. Silverman (In re American Preferred Prescription, Inc.), 266 B.R. 273, 277 (E.D.N.Y. 2000) ("The case law, however, recognizes an exception to the *res judicata* bar where the debtor has reserved the right to object to claims in a plan."). The parties' dispute focuses on how much detail a plan or disclosure statement must contain to accomplish reservation and enable a post-confirmation trustee or reorganized debtor to prosecute claims against creditors, thus precluding applicability of the *res judicata* doctrine. The Petitioners contend that the majority of the courts to have addressed the issue have held that a debtor may preserve the right to commence litigation against creditors in the plan or disclosure statement in

order to defeat the *res judicata* bar that attaches to a bankruptcy court's order confirming a reorganization plan, but that such preservation must be specific and unequivocal. According to the Petitioners, the Bankruptcy Court found that the doctrine of *res judicata* did not stop a debtor or trustee from pursuing claims post-confirmation against third parties even though the claims were not *specifically* and *unequivocally* preserved in the Plan or Disclosure Statement. Thus, the Petitioners assert that there is a substantial ground for a difference of opinion as to this finding. On the other hand, the Respondent disputes this characterization of the Bankruptcy Court's holding and contends that the court did find that the Disclosure Statement specifically and unequivocally preserved the Trustee's current claims in the adversary proceeding, assuming that is the appropriate standard in this circuit. Thus, the Respondent asserts that the Petitioners' dispute is merely with the Bankruptcy Court's application of the law to the facts, rather than the governing legal standard

The degree of reservation specificity required to escape the *res judicata* bar varies among courts. See In re MPF Holding US LLC, 443 B.R. 736 (Bankr. S.D. Tex. 2011) ("Courts have differed on how specific the reservation provision in a plan must be."); In re Goodman Bros. Steel Drum Co., Inc., 247 B.R. 604, 607 (Bankr. E.D.N.Y. 2000) ("Case law is divided on how specific language of retention and enforcement must be"); 7 Lawrence P. King, Collier on Bankruptcy ¶ 1123.02[3][b], at 1123–23 (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2008) (noting disagreement over the specificity required to preserve claims).

Generally speaking, three approaches have developed to address this precise issue. A minority of courts have held that broad, categorical language in the plan or disclosure statement is sufficient to preserve subsequent causes of action. See, e.g., Kmart Corp. v. Intercraft Co. (In re Kmart Corp.), 310 B.R. 107, 124 (Bankr. N.D. Ill. 2004) ("[A] categorical reservation can

effectively avoid the *res judicata* bar."); In re Ampace Corp., 279 B.R. 145, 156–62 (Bankr. D. Del. 2002) (detailing arguments from competing lines of cases and then holding that "a subsequent action is *not* barred by a prior confirmation hearing under the doctrine of *res judicata* where the disclosure statement and plan contain a *general* reservation of the right to pursue preference actions post-confirmation.") (emphasis in original); In re Worldwide Direct, Inc., 280 B.R. 819, 823 (Bankr. D. Del. 2002) (rejecting specificity requirement and allowing a more general reservation of claims because "it is simply impractical and unwarranted to require a debtor to provide in excruciating detail all of the possible defenses or objections which the estate may have to every single claim being treated in the plan"); P.A. Bergner & Co. v. Bank One (In re P.A. Bergner & Co.), 140 F.3d 1111, 1117 (7th Cir. 1998) ("[W]hile there might be some logic in requiring 'specific and unequivocal' language to preserve claims belonging to the estate . . . the statute itself contains no such requirement."); In re Weidel, 208 B.R. 848, 853 (Bankr. M.D.N.C. 1997) ("("The sound rationale expressed by these courts is that under § 1141(a) debtors and creditors are bound by the terms of the plan and a general reservation of the right to object is a valid and binding plan provision.") (collecting cases).

In the First Circuit for example, "categorical reservations are sufficient, so long as the language used identifies the categories with enough detail to put creditors on notice." In re Felt Mfg. Co., Inc., 402 B.R. 502, 517 (Bankr. D. N.H. 2009). As noted by a district court in this circuit,"[a]lthough a minority of courts, including some in this Circuit, have held that a blanket reservation of rights survives a *res judicata* challenge, their rationale was generally based on the practicalities of shepherding large Chapter 11 cases to confirmation." In re Porter, 382 B.R. 29, 40 (Bankr. D. Vt. 2008).

A second approach that some courts have taken is a more middle-ground approach, which varies with the circumstances of the bankruptcy case and the plan's language. See, e.g., In re Associated Vintage Group, Inc., 283 B.R. 549, 563–64 (B.A.P. 9th Cir. 2002) (rejecting exact specificity requirements and instead adopting a more flexible, case-by-case approach to determining the degree of specificity required in a plan of reorganization); Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.), 316 B.R. 495, 504 (Bankr. M.D. Tenn. 2004) (stating that the reservation provision in a plan must be evaluated within the context of each case and in relation to the particular claims at issue).

Finally, a majority of courts that have approached the question have done so more strictly, requiring that a reservation provision have some degree of specificity. See, e.g., Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC), 540 F.3d 351, 355 (5th Cir. 2008) ("For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions . . . . The reservation must be specific and unequivocal.") (internal citations omitted); Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002) ("[A] general reservation of rights does not suffice to avoid *res judicata*."); In re Kelley, 199 B.R. 698, 704 (B.A.P. 9th Cir. 1996) ("[e]ven a blanket reservation by the debtor reserving 'all causes of action which the debtor may choose to institute' has been held insufficient to prevent the application of *res judicata* to a specific action.") (quoting In re Hooker Investments, 162 B.R. 426, 433 (Bankr. S.D.N.Y. 1993)); D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York, No. 95 Civ. 4974, 1996 WL 224517, at *4 (N.D. Ill. May 1, 1996) ("[A] blanket reservation of rights is insufficient to overcome the *res judicata* bar to the institution of a post-confirmation lawsuit imposed by a confirmed bankruptcy plan."), aff'd, 112 F.3d 257, 261 (7th Cir. 1997) ("To avoid res judicata the reservation of a cause of action must be both express, as in writing, and express, as in

16

specifically identified."). <u>See also</u> <u>American Preferred</u>, 266 B.R. at 277 (explaining that many courts have held that to avoid *res judicata*, "the plan must expressly reserve the right to pursue *that particular claim* post-confirmation and that a blanket reservation allowing for an objection to *any claim* is insufficient") (emphasis in original); <u>In re Hooker Invs., Inc.</u>, 162 B.R. 426, 433– 34 (Bankr. S.D.N.Y. 1993) (discussing relevant case law and finding that "[e]ach of these decisions either expressly or impliedly recognizes that whereas a blanket reservation would not be enough to escape the res judicata bar, an express reservation would").

The Second Circuit itself has yet to expressly embrace any of the above three approaches. <u>See In re Porter</u>, 382 B.R. at 40 (noting that as of 2008, the Second Circuit had yet to rule on whether reservation of rights language must be specific in Chapter 11 plans). Some district courts have interpreted the Second Circuit's decision in <u>Sure–Snap Corporation v. State St. Bank & Trust Company</u>, 948 F.2d 869 (2d Cir. 1991), as "impliedly recogniz[ing] that should such an exception to *res judicata* exist, the right to bring the subsequent litigation must be specifically reserved in the confirmed plan." <u>See, e.g.</u>, <u>American Preferred</u>, 266 B.R. at 278; <u>see also D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York</u>, No. 95 C 4974, 1996 WL 224517, at *4 (N.D. Ill. May 1, 1996), aff'd, 112 F.3d 257 (7th Cir.1997) (interpreting <u>Sure–Snap</u> to imply that, to escape the *res judicata* bar, the right to bring post-confirmation litigation must be expressly reserved in the confirmed plan).

However, this inferred strict approach has not been explicitly adopted by the Second Circuit, and district and bankruptcy courts within the Second Circuit have not uniformly followed this interpretation of <u>Sure-Snap</u>. For example, in <u>Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)</u>, 300 B.R. 564, 570 (S.D.N.Y. 2003), the district court found that a general reservation of the right to litigate post-confirmation claims was acceptable because it was

persuaded that in large Chapter 11 bankruptcies "the investigation and decision to pursue every possible claim of a debtor can take several years," and that "allowing a debtor to include a general reservation . . . expedites the process of confirming a plan of reorganization." 300 B.R. at 569. The <u>Appel</u> Court further stated that "[i]t is neither reasonable nor practical to expect a debtor to identify in its plan of reorganization or disclosure schedules every outstanding claim it intends to pursue with the degree of specificity that the Katzes would require." <u>Id.</u> Moreover, in <u>In re Perry H. Koplik & Sons, Inc.</u>, 357 B.R. 231 (Bankr. S.D.N.Y. 2006), another district court in this circuit found "that a debtor's plan of reorganization may reserve postconfirmation claims in general terms," and thus the court's jurisdiction over postconfirmation claims was expressly reserved by broad language. The court further stated that "[i]t is neither reasonable nor practical to expect a debtor to identify in its plan of reorganization or disclosure schedules every outstanding claim it intends to pursue with the degree of specificity that the [defendants] would require.")). <u>Id.</u>

However, the different articulations as to the degree of specificity required to escape the *res judicata* bar in this circuit does not, as the Petitioners contend, satisfy the second prong for an interlocutory bankruptcy appeal. This is because the rationale relied upon by Judge Eisenberg would suffice under any of the varying approaches, and thus the disagreement as to the appropriate standard is irrelevant. While there would potentially be a disputed question if the Bankruptcy Court's decision was based merely upon a blanket reservation provision, this is a mischaracterization of the Order. Rather, Judge Eisenberg found that the Trustee's causes of action were reserved because "[a]lthough the Plan contains a general reservation of causes of action post-confirmation, the Disclosure Statement expressly identifies certain preferential payments received by the Defendants as potential Causes of Action reserved for possible

prosecution post-confirmation notwithstanding any defenses of *res judicata* or collateral estoppel." 2011 WL 5417094, at *7. In particular, the Order noted that the Disclosure Statement provided, in part, as follows:

> Identified in the Debtor's Statement of Financial Affairs at question 3(a) is a *non-exclusive list of certain potential Causes of Action, which are expressly identified and preserved for possible prosecution on and after the Effective Date.* The failure to list any potential or existing claims or Clauses of Action is not intended to and shall not limit the rights of the Liquidation Trustee to pursue any claims or Causes of Action not listed or identified.

Question 3(a) of the Debtor's Statement of Financial Affairs listed payments made by the Debtor to most of the Petitioners within the one year period prior to the Petition Date. Therefore, the Bankruptcy Court found that:

> Creditors voting on the Plan, including the Defendants to the extent they hold claims as creditors, were clearly given notice in the Disclosure Statement of the transfer to the Liquidation Trust of any pending and potential causes of action, in particular, actions against the insiders for payments received from the Debtor as set forth in question 3 of the Debtor's Statement of Financial Affairs, and that the Trustee may be pursuing these causes of action. The Disclosure Statement is consistent with the language in the Plan and Trust Agreement showing that one of the principal purposes of the Liquidation Trust is to resolve, liquidate and realize upon the Debtor's assets, including causes of action, post-confirmation.

Therefore, the Bankruptcy Court found that the causes of action asserted in the adversary proceeding were expressly reserved in the Disclosure Statement. There is no substantial ground for dispute that even if a blanket reservation in the plan itself is insufficient, if the disclosure statement expressly reserves causes of action, then there is no *res judicata* bar. See Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp., No. 00 Civ. 8688, 2004 WL 1119652, *4 (S.D.N.Y. May 20, 2004) (finding that the specific reservation of the right to litigate claims post-confirmation can be in the plan or the disclosure statement so long as the defendants had notice). In fact, in affirming the Appel decision, the Second Circuit did so on the ground that the disclosure statement adequately informed the creditors that specified claims

19

would not be part of the bankruptcy estate and thus *res judicata* did not apply. <u>In re I. Appel Corp.</u>, 104 Fed. App'x. 199 (2d Cir. 2004). In particular, the Second Circuit noted that because a reservation of rights in a Chapter 11 plan is read in conjunction with the disclosure statement, if the latter provides more specificity, that will suffice to overcome the *res judicata* bar.

The Petitioners' remaining arguments, including that the language in the disclosure statement was equivocal, still do not warrant an interlocutory appeal. Any contentions with regard to the Bankruptcy Court's finding that the Disclosure Statement expressly reserved the Trustee's causes of action is a heavily fact-based question and it appears that the Petitioners "are merely quibbling with this Court's application of the facts to the law, not with the underlying legal rule, which is necessary if this Court is to certify an immediate appeal." <u>Estevez-Yalcin v. The Children's Village</u>, No. 01 Civ. 8784, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006).

Therefore, in light of the precise ground upon which the Bankruptcy Court's decision rested, there is no ground for dispute as to the law but only as to the application of the law to the underlying facts. See <u>Goldin</u>, 2004 WL 1119652, at *4 ("When read conjunctively with the Disclosure Statement, the Plan clearly expresses SmarTalk's intent to preserve its claims against defendants in this action. Although the reservation clause in the Plan is a blanket one, and thus insufficient alone to preserve the Debtor's claims, . . . the Disclosure Statement details the specific causes of action SmarTalk was pursuing against both the WWD and DLJ defendants at the time of confirmation."); <u>In re I Appel</u>, 300 B.R. at 570 ("The Plan indicated that the Debtor was reserving all causes of action, and the Disclosure Statement indicated that the Debtor was investigating potential claims against [defendants]."); <u>In re Goodman Bros.</u>, 247 B.R. at 610 (noting that notice in a disclosure statement of actions debtor intends to pursue post-confirmation

provides sufficient notice to creditors since disclosure statement must be provided along with plan pursuant to Section 1125(b) of the Bankruptcy Code).

Therefore, the motion for an interlocutory appeal is denied because there is not a controlling question of law and the Bankruptcy Court's finding is not an issue about which there is a substantial ground for disagreement. Accordingly, the Court need not address issues of judicial economy — whether an immediate appeal on that issue could materially advance the ultimate termination of this litigation — or whether exceptional circumstances that would justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment exist in this case. Thaler v. Estate of Arbore ( In re Poseidon Pool & Spa Recreational, Inc.), 443 B.R. 271, 275 (E.D.N.Y. 2010) ("[A]ll three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal.").

### III. CONCLUSION

"Courts should construe the requirements for certification strictly and only exceptional circumstances will justify certification." Green v. City of New York, No. 05 Civ. 0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006). The Court finds that the determination by Judge Eisenberg does not constitute the appropriate circumstances for an interlocutory appeal in that it does not demonstrate the requisite elements needed to overcome the general aversion to piecemeal litigation. See In re AroChem Corp., 176 F.3d 610, 619 (2d Cir. 1999).

For the above stated reasons, it is hereby

**ORDERED**, that the Petitioners' request for leave to file an interlocutory appeal from the November 8, 2011 Bankruptcy Order is denied.

**SO ORDERED**.

Dated: Central Islip, New York
        March 24, 2012

                                        ____/s/ Arthur D. Spatt_____
                                        ARTHUR D. SPATT
                                        United States District Judge